IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| AECOM SPECIAL MISSION SERVICES, INC., ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> INTERNATIONAL UNION OF OPERATING ) <br> ENGINEERS, LOCAL NO. 99, ) <br> ) <br> *Defendant*. ) <br> ) | Civil Action No. 1:16-cv-1262 |

## **MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff, AECOM Special Mission Services, Inc.'s ("AECOM"), Motion for Judgment on the Pleadings, Dkt. No. 10; and Defendant, International Union of Operating Engineers, Local No. 99's ("Local No. 99") Cross-motion for Judgment on the Pleadings. Dkt. No. 15. Plaintiff seeks a declaratory judgment that the parties' Collective Bargaining Agreement ("CBA") expired. Defendant counters that the Court lacks authority to enter judgment because the dispute is subject to binding arbitration. In the hearing in this matter on December 21, 2016, the Court found that it did have authority to hear the dispute and noted its intent to GRANT Plaintiff's Motion and DENY Defendant's Motion. This memorandum opinion sets forth the reasons for that decision.

### I. Background

The following facts are taken from the Complaint, Answer, and attached exhibits which are all considered in addressing a Motion for Judgment on the Pleadings. *See Seneca Ins. Co. v.*

*Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 510 (E.D. Va. 2014) ("in addressing a Rule 12(c) motion, the Court may consider the Answer and attached exhibits in addition to the Complaint").

Plaintiff is a Pennsylvania corporation which provides operations and management services, in relevant part, to United States government agencies in Fairfax County, Virginia. Some of the employees working at these facilities are members of Defendant-union. Plaintiff and Defendant entered into a CBA which commenced on June 1, 2012. The CBA was scheduled to run until May 30, 2014 but Article XI of the CBA includes an "evergreen clause" which provides that the CBA renews each year on May 30 unless a party provides written notice of the desire to not renew. The notice must be given more than sixty days prior to May 30. The sixty day renewal notice mirrors the requirement set forth in section 8(d) of the National Labor Relations Act that "no party shall terminate or modify such contract unless the party desiring [to terminate] . . . serves a written notice upon the other party . . . sixty days prior to the expiration date thereof[.]" 29 U.S.C. § 158(d). The CBA renewed on its termination dates in 2014 and 2015 as neither party filed a written notice of expiration.

The CBA also contains an arbitration provision. Article VI provides that "[i]n the event any grievance or dispute arises as to the interpretation, application, or any claimed violation of this Agreement, the Union and the Employer shall meet in an effort to reach an amicable settlement." Dkt. No. 5, Exh. A at 7. The CBA grievance process consists of three "steps" of party-initiated review. "In the event that the matter remains unresolved after the third step, either party may . . . refer the matter to binding arbitration." *Id.* at 8.

In 2016, the parties engaged in negotiations for a new CBA. Lester Jordan, AECOM's Director of Employee & Labor Relations was the principal CBA negotiator for AECOM. On March 25, 2016, Mr. Jordan sent a letter to Don Havard, President of Local 99. The subject line

2

of the letter stated: "Subject: Notification of Intent Not to Renew Current CBA." The letter states in its entirety:

> This is notification pursuant to Article XI of the Collective Bargaining Agreement (CBA), as well as Section 8(d) of the National Labor Relations Act, of AECOM's intent to discontinue the evergreen clause for the existing CBA between the parties dated June 1, 2012 to and including May 30, 2014 at Langley, VA, on the next anniversary, May 30, 2016. It shall not renew thereafter unless agreed to in writing by the parties. AECOM's desire is to continue bargaining with the IUOE in good faith for a follow on CBA. I am available for negotiations the week of April 4th, and May 2nd. If other dates are more suitable, I may be able to rearrange my schedule. Please let me know your availability.
>
> If you have any questions, feel free to contact me at 757-383-6223 or 301-526-0093.

Dkt. No. 1, Exh. 2.

Defendant received Plaintiff's letter on or before March 28, 2016. Over the ensuing months, Defendant took a number of steps to express its disagreement with the letter. Sometime before April 15, 2016, Mr. Havard wrote to Mr. Jordan that Defendant did not believe that the March 25, 2016 letter constituted a withdrawal from the CBA. Defendant's original response to the letter was not entered into evidence but Defendant contends that "the letter provides notice not of a timely intent to terminate the CBA, but rather, to terminate a specific, unnumbered section of the CBA, identified by AECOM as the "evergreen clause." Dkt. No. 15, Exh. 2 at 9. On April 15, 2016, Mr. Lester replied to Mr. Havard reinforcing Plaintiff's view that the March 28, 2016 letter was a clear intent to terminate pursuant to the CBA. Defendant filed a grievance with Plaintiff on May 3, 2016. On July 12, 2016 Plaintiff sent a "Step 3" response to Defendant's grievance. The Step 3 response reiterated the viewpoint expressed in the April 15, 2016 letter. Defendant filed an arbitration demand on August 31, 2016 with the American Arbitration Association in relation to the earlier grievance. Plaintiff sent a letter to the American Arbitration Association objecting to the arbitration demand.

3

Contemporaneous with their dispute over whether the CBA had expired, the parties continued to negotiate over a new CBA. Plaintiff extended a last, best, and final offer in early June 2016. The offer was rejected by Defendant's members. The parties continued to negotiate and a tentative agreement for a new CBA was reached on August 25, 2016. The members rejected this tentative agreement.

Plaintiff filed a Complaint for Declaratory Judgment pursuant to Section 301 of the Labor Management Relations Act 29 U.S.C. §§ 185, *et seq.*, and Federal Rule of Civil Procedure 57 on October 5, 2016. Dkt. No. 1. Defendant filed an Answer and Counterclaim to compel arbitration on October 26, 2016. Dkt. No. 5. Plaintiff moved for Judgment on the Pleadings on November 21, 2016. Dkt. No. 10. Defendant cross-moved for Judgment on the Pleadings on December 1, 2016. Dkt. No. 15. The matter was fully briefed by the parties. The Court held a hearing on the Motions on December 21, 2016. The Court noted its intent to GRANT Plaintiff's Motion and DENY Defendant's Motion. This memorandum opinion fully explains the reasons for the Court's decision.

## II. Legal Standard

A party may move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss made pursuant to Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). "Accordingly, [the Court] assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in the non-moving party's favor." *Id.* "A court shall grant a motion for judgment on the pleadings under Rule 12(c) where 'it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to

party cannot prove any set of facts in support of its claim that would entitle it to relief.'" *Id.* (quoting *Shooting Point, L.L.C. v. W.M. Cumming*, 238 F.Supp.2d 729, 735 (E.D. Va. 2002)).

## III. Discussion

The Motion for Judgment on the Pleadings presented two questions. First, was the sufficiency of Plaintiff's notice of termination subject to the CBA's arbitration provision? Second, if so, did Plaintiff's notice of termination satisfy the requirements of the CBA? The Court held on December 21, 2016 that the matter was not subject to the arbitration provision of the CBA and that Plaintiff had satisfied its termination obligations.

### A. Whether the Dispute is Subject to Arbitration

Arbitration disputes are subject to a two-step judicial inquiry. "First, [the Court] determine[s] *who* decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if…the court is the proper forum in which to adjudicate arbitrability, … *whether* the dispute is, in fact, arbitrable." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012) (emphasis original). The parties agree that the Court is the proper forum in which to adjudicate arbitrability.[1] Accordingly, the Court's analysis centers on whether the dispute is in fact arbitrable.

The second step of the judicial inquiry is principally governed by two decisions of the Fourth Circuit and further informed by a decision by a court in this District. In *Virginia*

---

[1] The Court has this authority as a matter of law. While the Court submits to a "general policy-based, federal presumption in favor of arbitration" the presumption does not apply to "questions of the arbitrability of arbitrability issues themselves" *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999). The parties can nevertheless direct these questions to an arbitrator, but only through clear and unmistakable language in the arbitration clause. *Id.* An arbitration clause "committ[ing] all interpretive disputes 'relating to' or 'arising out of' the agreement" does not satisfy the "clear and unmistakable" test. *Id.* at 330; *see also E.I. DuPont de Nemours & Co. v. Martinsville Nylon Emps.' Council Corp.*, 78 F.3d 578 (4th Cir. 1996) (unpublished) (holding an arbitration provision that "[a]ny question as to the interpretation of this Agreement or as to any alleged violation of any provision of this Agreement" did not meet the clear and unmistakable test). The arbitration clause in the CBA is similarly broad. The provision applies to "any grievance or dispute [which] arises as to the interpretation, application, or any claimed violation of this Agreement[.]" Dkt. No. 5, Exh. A at 7. This clause does not clearly and unmistakably commit the arbitrability question to the arbiter.

*Carolina Tools v. International Tool Supply, Inc.*, the Fourth Circuit affirmed the district court's finding that whether or not a contract had expired or been renewed by oral agreement was a decision for the court and not the arbitrator. 984 F.2d 113, 118 (4th Cir. 1993). In that case the parties entered into a commercial option contract to purchase certain assets which expired sixty days after signing unless the option holder exercised earlier upon ten days' notice. *Id.* at 115. The contract included a broad arbitration provision covering "any dispute aris[ing] between the parties." *Id.* After the contract expiration date, the parties continued to negotiate the asset purchase without success. *Id.* After talks broke down the appellant sought to exercise the option and demanded the parties arbitrate whether the agreement was still in force. *Id.* The appellee refused both requests and appellant sued to compel arbitration.

The Fourth Circuit's reasoning rested on two grounds. First, it seemed unlikely "that parties would intend in the ordinary course to commit to arbitration disputes about the very existence (whether by origination or termination) of their contractual relationship" if they did not commit to giving the arbitrator authority over the threshold question of arbitrability. *Id.* at 118. The Fourth Circuit thought "it proper to accord the [general presumption in favor of arbitrability] less force in respect of contract duration issues than is appropriate in respect of disputes arising under a contract whose own continuation is unchallenged." *Id.* Second, the court found that the parties' had agreed to an "express termination date provision [after 60 days]. There was thus no incipient issue of contract duration...hence no built-in likelihood of dispute over its duration." *Id.* The court considered these two factors when determining whether it was the intent of the parties to submit the durational issue to arbitration. *Id.* The court found that the general arbitration provision in the CBA could not overcome the lack of intent to submit the durational issue to arbitration. *Id.* at 119.

In *Peabody*, the Fourth Circuit placed *Virginia Carolina Tools* within "a narrow class of cases, [where] courts—not arbitrators—must decide questions of contract duration." *Peabody*, 665 F.3d at 105. The *Peabody* court found that a dispute over the expiration of a labor agreement was a question for the arbitrator and not the court. *Id.* at 98. The disputed contract included a broad arbitration provision and a clause which provided that the agreement did not extend to non-signatories to the agreement. *Id.* After a corporate restructuring, the appellant's newly formed business entity, a non-signatory, claimed it was no longer bound by the contract. *Id.* at 98-99. Appellee sought arbitration, and appellant moved for declaratory judgment. *Id.* at 99. The court declined to follow *Virginia Carolina Tools* because it found that the pertinent "termination" clause was not an express termination date provision. *Id.* at 106. The court could not "neatly apply an express termination date provision" so "resolution of the parties' duration dispute in this case is more akin to an intricate interpretational question presumed to have been committed to the arbitrator. *Id.* The court noted that the contract did contain an early termination date provision which called for the extinguishment of all obligations on December 31, 2011 but observed that this contract provision was not at issue in the suit. *Id.* at 105.

Similarly, in *Spectrum Healthcare Resources, Inc. v. InGenesis Arora Military, LLC*, the parties disputed whether a termination provision in a subcontract which activated once its associated prime contract expired was a subject to arbitration. No. 1:12-CV-645, 2012 WL 4461287, at *2 (E.D. Va. Sept. 24, 2012). The defendant sought to enforce the arbitration clause to decide the dispute and the plaintiff invoked *Virginia Carolina Tools* to argue that the durational dispute was not arbitrable. *Id.* *4. The court found that the dispute aligned more closely with *Peabody* because the "arbitration question focuses on the construction of a term in the Subcontract." *Id.* Specifically, "the meaning of the term . . . in the Subcontract is

7

ambiguous." The court further reasoned that where "the duration of the contract depends upon the interpretation of a term in the contract, the presumption in favor of arbitrability controls and arbitration is required." *Id.*

Plaintiff contends that the dispute before the Court is not subject to arbitration because it falls within the exception provided by *Virginia Carolina Tools*. Plaintiff represents that both factors relied on by the court in *Virginia Carolina Tools* are present in this case. The parties agree that they did not commit to give the arbitrator authority over threshold questions of arbitrability. Furthermore, Plaintiff argues that Article XI of the CBA is an express termination provision consisting of two parts: (1) a CBA termination date of May 30, 2014, or succeeding anniversaries thereafter; and (2) a sixty-day advanced written notice requirement to bring the termination into effect. Plaintiff contends that this provision is "clear and straightforward, and does not begin to suggest intent of the parties to commit any dispute concerning the issue of contract duration to arbitration." Dkt. No. 18 at 4. Accordingly, the broad arbitration clause did not commit the parties to arbitrate issues of contract duration.

Defendant counters that the dispute must go before the arbitrator and is not comparable to *Virginia Carolina Tools*. Defendant distinguishes *Virginia Carolina Tools* as a case limited to its facts by the subsequent decisions in *Peabody* and *Spectrum Healthcare*. Defendant further argues that the termination provision in the CBA is not an "express termination date provision." Rather, it is indeterminate and requires the Court to engage in contract interpretation to elucidate whether the contract has terminated—a power reserved for the arbiter. Finally, Defendant argues that *Virginia Carolina Tools* was a commercial dispute instead of a labor dispute and that a long history of case law supports the presumption in favor of arbitration in labor disputes.

8

Defendant's arguments fail to dislodge this dispute from the carve-out permitted by the court in *Virginia Carolina Tools* for four reasons. First, Defendant too narrowly defines an "express termination date provision" to the unreasonable exclusion of the term in this case. Second, the inherent uncertainty and intricate interpretational questions in *Peabody* and *Spectrum Healthcare* are absent in this case. Third, the fact that the CBA could expire on any anniversary date does not by itself render the agreement indefinite. Fourth, there is no significance to this case that the present dispute arises out of a labor agreement as opposed to a commercial contract. There are also sound policy reasons for the Court to retain jurisdiction in this matter. The Court addresses each of these grounds in turn.

Defendant is correct that *Peabody* limits *Virginia Carolina Tools* to cases of "express termination date provisions" but Defendant reads that phrase too narrowly. As discussed above, the termination provision in Article XI of the CBA consists of two parts. The sixty day notice requirement is a facsimile of the statutory obligation imposed by 29 U.S.C. § 158(d). The remaining provision of Article XI unquestionably bears a termination date of May 30 each year. This language is far closer to the express termination date provisions recognized in *Virginia Carolina Tools* ("60 days...from the date of execution of this agreement or before at Buyer's option, by Buyer's providing ten days written notice of exercise of option to Seller") and in dicta in *Peabody* ("the Jobs Agreement's only such provision calls for the extinguishment of all obligations on December 31, 2011") as compared with the one argued and rejected in *Peabody* which contained no reference to a calendar date ("does not constitute a covenant running with the land and does not apply to the sale of nonsignatory coal lands, coal reserves or coal operations (either asset sales or stock sales) of the nonsignatory Companies."). *Virginia Carolina Tools*, 984 F.2d at 116; *Peabody*, 665 F.3d at 106; *see also Spectrum Healthcare*, 2012

WL 4461287, at *5 (finding that a sub-contract provision tying its termination to the prime contract was not an express termination date provision).

Stated another way, the disputed provisions in *Peabody* and *Spectrum Healthcare* were inherently uncertain, where Article XI is not. Those agreements could have expired the day after formation, a week after formation, or any other time before or after. "[R]esolution of the parties' durational dispute [was] more akin to an intricate interpretational question presumed to have been committed to the arbitrator"—i.e. whether corporate restructuring in *Peabody* or prime contract cancellation in *Spectrum Healthcare* had occurred. *Peabody*, 665 F.3d at 106. "Whereas [here]...we can neatly apply an express termination date provision" in Article XI of the CBA to this dispute. *Id.* Article XI does not suffer the "incipient issue of contract duration" present in *Peabody* or *Spectrum Healthcare*. *Virginia Carolina Tools*, 984 F.2d at 118. The CBA could not expire at any uncertain time. It could only expire on May 30, 2014 or any anniversary thereafter. Unlike *Peabody* and *Spectrum Healthcare*, the parties here do not have to interpret intricate events occurring outside of the contract to affix the date of expiration—they need only look at their calendars.

The parties do need to provide notice of the expiration sixty days before the anniversary. While Defendant argues that it did not receive adequate notice of expiration, this notice requirement, imposed by 29 U.S.C. § 158(d) notwithstanding its inclusion in Article XI, does not render the CBA indeterminate. Unlike the parties in *Peabody* and *Spectrum Healthcare* who operated under a persistent cloud of uncertainty, the parties in this case were on notice at all relevant times that the agreement could expire on May 30, 2016. In this respect the CBA is distinguishable from the substantive ambiguities in the termination provisions in *Peabody* (requiring a determination of whether third parties could be bound as signatories to an

agreement) and *Spectrum Healthcare* ("the focus of the arbitrability question should be on whether the Subcontract term…is ambiguous and should be construed as Spectrum argues or instead as IAM argues."). *See Peabody*, 665 F.3d at 99-100; *Spectrum Healthcare*, 2012 WL 4461287, at *4. For these reasons, Article XI of the CBA is more analogous to the express termination date provision in *Virginia Carolina Tools* than the non-durational termination provisions in *Peabody* and *Spectrum Healthcare*.

The fact that the agreement could expire on a later anniversary does not distinguish the case from *Virginia Carolina Tools*. The "express termination date provision" in *Virginia Carolina Tools* was exercisable early—any time *up to* the expiration of the option contract upon ten days' notice. *See Virginia Carolina Tools*, 984 F.2d at 116. In this respect the late-termination provision in Article XI is actually more definite than the early-termination in *Virginia Carolina Tools*. The option holder in *Virginia Carolina Tools* could exercise early at any point given ten days' notice. The parties to the CBA are beholden to the anniversary termination date whether they opt to exercise in 2014, 2015, or 2016.

Defendant's attempt to distinguish *Virginia Carolina Tools* as a commercial dispute as opposed to a labor disagreement is also unavailing. The Supreme Court has observed that "commercial arbitration and labor arbitration have different objectives. In the former case, arbitration takes the place of litigation, while in the latter 'arbitration is the substitute for industrial strife." *Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 378 (1974). Nevertheless, the policy grounds for arbitrating labor disputes, though significant, do not apply "where evidence of the parties' agreement to arbitrate the dispute in question is lacking" because the policy favoring arbitration arises "only after the Court [is] persuaded that the parties' arbitration agreement [is] validly formed and that it cover[s] the dispute in question and [is]

legally enforceable." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). Since the arbitration agreement does not cover the dispute before the Court, the policy does not apply.

Because this dispute falls within the narrow class of cases governed by *Virginia Carolina Tools*, the presumption in favor of arbitrability applies with less force. *See Peabody*, 665 F.3d at 118. Accordingly, the Court inquires whether the parties intended to subject this dispute to arbitration. On that inquiry, the present case reaches the same result as in *Virginia Carolina Tools*. The Court cannot infer that the parties' broad non-specific arbitration clause in Article VI "applied to a dispute over the very continuation of contractual obligations[.]" *Virginia Carolina Tools*, 984 F.2d at 118. Furthermore, it is hard to believe that arbitration of durational issues was the intent of the parties when they entered into the CBA because they did not agree to arbitrate the threshold question of arbitrability. *See id.* ("[I]t seems only slightly—if at all—less likely that parties would intend in the ordinary course to commit to arbitration disputes about the very existence (whether by origination or termination) of their contractual relationship than that they would intend to commit to arbitration the threshold question of the arbitrability of such disputes."). Because "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit", the present dispute is properly before the Court for adjudication. *Peabody*, 665 F.3d at 103 (quotations and citations omitted).

The foregoing result is not only legally required, it is practically sound. The judiciary's policy favoring enforcement of arbitration agreements is to promote "efficient and speedy dispute resolution." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The *Peabody* court opined that requiring "every durational dispute raised pursuant to an arbitration clause that is not unusually broad must be adjudicated by a court—risks frustrating our goal of

promoting efficient and speedy dispute resolution." *Peabody*, 665 F.3d at 107 (quoting *Dean Witter*, 470 U.S. at 221). But this case stands at the threshold of going too far in the opposite direction, disturbing *Virginia Carolina Tools* and holding that every durational dispute *must* go to arbitration. Under Defendant's argument, even if Plaintiff had sent a letter every day leading up to the sixty-day threshold reiterating its intent to withdraw, *any* objection to the letters would be sufficient to obstruct Plaintiff from winding up the CBA or seeking judicial determination to that effect. As a result, no claim that the CBA has terminated could escape arbitration despite the protection of *Virginia Carolina Tools*. If parties know that including an evergreen clause creates this implied waiver of judicial remedies they may be less likely to enter into those agreements in future collective bargaining agreements. Thus, the price of compelling arbitration in this case is the unintended consequence of undermining the desirability of evergreen clauses going forward—a result which could increase the risk of protracted labor disputes which arbitration is otherwise intended to avoid. The *Peabody* court emphasized that "[w]e must eschew a regime in which a party wiggle[s] out of an obligation to which it has agreed merely by raising a particular defense, no matter how fanciful." *Peabody*, 665 F.3d at 107 (quotations and citations omitted). Similarly, the Court eschews a regime in which the Defendant can wiggle out of its negotiated termination provision, and deny Plaintiff access to the court, without a legitimate arbitrable dispute.

For the foregoing reasons, the Court finds that it does have authority to determine whether the CBA expired.

### B. Whether the CBA Expired on May 30, 2016

Because the Court has jurisdiction over this matter, the Court turns to consider whether Plaintiff gave sufficient notice of intent to withdraw from the CBA and whether the CBA did expire on May 30, 2016.

"Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting 28 U.S.C. § 2201(a)). "[A] declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quotations omitted).

Plaintiff believes that the March 25, 2016 Jordan letter (reproduced in its entirety above) clearly conveys notice of intent not to renew the CBA. Defendant contends that "the letter provides notice not of a timely intent to terminate the CBA, but rather, to terminate a specific, unnumbered section of the CBA, identified by AECOM as the "evergreen clause." Dkt. No. 15, Exh. 2 at 9.

Defendant's reading of the letter is without merit. Defendant places undue emphasis on the phrase "intent to discontinue the evergreen clause" while disregarding the letter's remaining contents. The letter is littered with indisputable evidence of intent to terminate the CBA. The subject line states "Notification of Intent Not to Renew Current CBA" and the first two sentences state of the CBA that "on the next anniversary, May 30, 2016. It shall not renew thereafter unless agreed to in writing by the parties." Neither of these clear invocations can be mistaken for intent

14

to terminate specific unnumbered sections. They each evince intent to terminate the CBA according to its terms. Furthermore, the "evergreen clause" section about which Defendant expressed ambiguity is preceded by the statement that "[t]his is notification pursuant to Article XI of the Collective Bargaining Agreement." Thus even if Defendant could claim unfamiliarity with the "evergreen" term of art, the letter explicitly indicates that the notification *is* numbered in Article XI of the CBA.

Based on the agreed facts and evidence presently before the Court, the meaning of the letter is beyond dispute. Consequently, Plaintiff is entitled to judgment on the pleadings. Plaintiff did not violate Article XI of the CBA through its letter of intent not to renew and the CBA between the parties terminated on May 30, 2016.

### IV. Conclusion

For the foregoing reasons, the Court ORDERS that Plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 10, is GRANTED and Defendant's Cross-Motion for Judgment on the Pleadings is DENIED.

February 21, 2017
Alexandria, VA

/s/
Liam O'Grady
United States District Judge